## JASPER CARL DAVID v. STATE.

No. A-2694.  Opinion Filed July 20, 1918.

1.  **EVIDENCE—Confessions—Cross-Examination.** The state is entitled to prove admissions of guilt or statements tending reasonably to connect the accused with the crime charged as a part of its case in chief, and there is no objection to this being developed on cross-examination or proved in rebuttal when the accused on cross-examination denies the statements or admissions.

2.  **JURY—Qualifications—Time to Object.** The fact that a member of the jury panel sitting in the trial of a criminal cause has been a county jailer or deputy sheriff and has had charge of the prisoner at the bar is not sufficient ground for vacating a verdict and judgment of conviction in the absence of any indication that injury resulted to the accused and in the absence of any showing to the effect that challenge was made or objection offered at the time such juror was examined on **voir dire** or accepted in the panel. In the case under consideration the plaintiff in error knew all the facts, and if he was not sufficiently dissatisfied with the juror to object at the time of the trial, this court would not feel warranted in reversing the judgment when no injury is made to appear.

*Appeal from District Court, Major County;*
*James B. Cullison, Judge.*

Jasper Carl David was convicted of larceny, and appeals. Affirmed.

*C. B. Wood* and *Hill & Wiles,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Jasper Carl David, was convicted at the October, 1915, term of the district court of Major county on a charge of larceny, and his punishment fixed at imprisonment in the state penitentiary for a period of four years.

The information charges the plaintiff in error with the larceny of 100 bushels of wheat from the granary of C. C. Hodge in Major county about the 26th of July, 1915.

The proof discloses the fact that on the night of July 26th about 100 bushels of wheat was stolen from the granary of C. C. Hodge; that a man named Webster discovered the thieves at the granary and reported the same to Mr. Hodge and other neighbors. This witness saw a wagon and team belonging to the plaintiff in error at this granary, and also another wagon and team. Three parties were indicted, charged with the theft of this wheat. The wagons were traced to another granary, and there the wheat and teams were found. Mr. Webster, Hodge's son, and other neighbors approached the place where the wagons had been driven with the stolen wheat, saw the thieves, who ran away, but being unarmed, they felt that it was not safe to approach them. Some of the fugitives were heard running into nearby water. The plaintiff in error, when arrested, was wet and his clothes were water soaked. The sheriff testified that he examined both the person and clothing of this party. Three arrests were made and a joint information filed. A severance was taken and the plaintiff in error placed on trial alone. The father of one of the codefendants admitted that one of the teams and one of the wagons were his. The question of guilt or innocence of codefendants does not arise in this review.

On his own behalf the plaintiff in error denied the charges and contradicted the material testimony given by the sheriff and all other witnesses in the case. The jury, after hearing all the testimony, found against him on the

facts, and their finding will not be disturbed by this court unless prejudicial error of law is made to appear. A review of the assignments will be had for the purpose of determining this feature.

The first assignment of error complained of is based upon the contention that the county attorney was erroneously permitted to cross-examine the plaintiff in error concerning conversations he had had with a codefendant named Goertz, in which he was asked if he did not say to the codefendant: "You get up and plead guilty and tell them that you hired me to go and help haul this wheat away and that I did not know anything about you stealing it" The witness denied having made a statement of this kind, and thereafter the county attorney introduced a witness named Miller, who testified in answer to questions that he heard the conversation and that defendant said to Goertz: "You tell them that you hired me to go with you and get this wheat and I knew nothing about it being stolen, because I have a bad reputation and my reputation alone would convict me in this case."

Complaint was made of the ruling of the court regarding this testimony. First, because it was not a matter of impeachment, and did not tend to show that David had made a false statement or to contradict him. Second, that the answer given by Miller was not responsive to the proposed impeaching question. Counsel argue that the testimony was admissible, if admissible at all, on the theory that it constituted an admission on the part of the plaintiff in error, and contend that the statement is not sufficient in law to constitute an admission against interest.

We are of opinion that the county attorney was entitled to prove this fact as a part of his case if he so desired, and that it was competent in the manner offered. If the plaintiff in error had not been connected with the crime and had no part therein, there would have been no reason why he should have tried to induce another participant to swear that he had hired him to go along. He was connected with this crime by the proof, and this conversation strengthens the proof. We do not feel warranted in reversing the judgment upon this ground.

Counsel supplement the argument upon this proposition by attacking the credibility of the state's witness. The attack made tends to indicate that the witness was not a model citizen himself, and had been guilty of abducting a female. All matters affecting the credibility of witnesses were developed before the jury. They saw and heard them testify, and there is no sufficient reason made to appear why we should interfere with the findings.

Counsel complain of the court's refusal to grant a new trial on the ground that the juror Wimpey was not qualified to sit in the cause for the reason that he had been a deputy sheriff and had custody of the plaintiff in error as jailer after he was arrested on this charge. The question was not raised until after the verdict was returned by the jury, and nothing is disclosed by the record to indicate that the juror was in any way biased or prejudiced against the plaintiff in error, and nothing indicates that his substantial rights were prejudiced by reason of the fact that this man was a member of the panel. It was the duty of counsel to examine the jurors on *voir dire* and discover by proper investigation the facts affecting their qualifications, and then to seasonably raise any objection

which might exist as to any member of the panel. The plaintiff in error at all times knew the facts. If he failed to inform his attorney, it is reasonably probable he did so because he was satisfied, and being so satisfied for the purpose of the trial, this court can see no reason why it should not be satisfied after the trial and permit the judgment to stand. There is nothing to indicate that the juror realized that he was in any way disqualified, or that he had any desire to serve on the jury. If the proper challenge had been made to the juror sitting in the cause before the jury had been impanelled, there is no doubt but that the trial court would have excused him. The objection having been made as it was, and under the circumstances it was, it came too late. No showing of probable injury appearing, this contention offers no sufficient reason for a reversal of the judgment.

The only other assignment of error urged in the brief is based upon the contention that the verdict is contrary to the law and the evidence. The argument offered discloses no ground upon which a reversal could lawfully be based.

The judgment of the trial court is in all things affirmed.

DOYLE, P. J., and MATSON, J., concur.